We'll move on to the next case. Thank you. Saxon Glass Technologies v. Apple. Good morning, Your Honor. This is Patrick Delaney. Mr. Delaney, go ahead. My name is Patrick Delaney. May it please the court? Am I starting, Your Honor? Yes, go ahead. May it please the court? My name is Patrick Delaney. I represent the appellant plaintiff, Saxon Glass Technologies. Overall, regarding the written opinion on summary judgment from the district court, the district court failed to consider the evidence fairly for Saxon or under the proper standard for summary judgment regarding many, if not all, of the issues under both fair use and likelihood of confusion. I will address the descriptive sense under fair use and Apple's use of the term ION-X first. Under this issue, Apple has the burden of proof that there is no evidence in the record that ION-X would be descriptive of ION exchange to a relevant consumer. That is, either an ordinary consumer buying a watch or a specialized type of glass. In the Second Circuit, when determining whether words are used descriptively or in a trademark sense, the inquiry must focus on the meaning of the words to prospective purchasers. That's the Blisscraft case. In its written opinion, the lower court points to an internal email among Apple employees using the term ION-X for ION exchange. But these Apple employees are not part of any relevant consumer group. In fact, they are a very biased sample in being acquainted in advance with the ION exchange process when they are using the term ION-X internally at Apple. That's the only evidence that's relied upon by the district court in its written opinion. The district court and Apple also appear to rely on a written opinion and declaration by Dr. Patrick Farrell, a linguist. But Dr. Farrell did not interview any proposed consumers or conduct any type of survey. He merely did Internet research and reviewed materials provided to him by Apple and then pronounced in his report that ION-X is likely to be understood as descriptive of ION exchange. But he does not specify by whom, and he especially fails to reference any consumers. Furthermore, Dr. Farrell's own report contradicts him. Dr. Farrell's opinions regarding ION-X are never directed to any consumer group, and the samples in his report of Apple's uses of the term ION-X include an explanation provided by Apple that ION-X is supposed to mean ION exchange. This runs contrary to the test for descriptiveness. Also, there is evidence in Dr. Farrell's report that consumers do not see the term ION-X as being descriptive of ION exchange. This is the only evidence, Your Honors, briefed by either side in which the descriptiveness or lack thereof of the term ION-X is shown with respect to a relevant consumer. This evidence is shown at page 10 of Dr. Farrell's report, that's at APPX 1741, in which a consumer of ION-X labeled glass tubes when encountering the term ION-X associated with a glass product as a source. Can we just look at the two phrases, the two terms, and on the face, consider whether they are descriptive? In other words, the process is ION exchange and ION-X or ION-X. They seem to both be descriptive in that sense. Well, Your Honor, that preconditions an understanding of the ION exchange process by the audience that is seeing those terms. If you are not acquainted with the ION-X process, like an ordinary consumer of an Apple Watch, you're not going to know that ION-X is an acronym for ION exchange. You're just not. To what extent is the ordinary consumer even exposed to the mark ION-X, to Saxon's mark? They're exposed to Saxon's mark through the Internet, Your Honor, and also through Saxon's publications and advertising as well as its invoices. But the ordinary consumer is exposed mostly over the Internet when they're doing research on strengthened glass and the terms ION-X or ION-EX. Well, when the ordinary consumer is considering buying a smart watch, do you think he or she will be doing research on processes for strengthening glass? They'll be doing research on different aspects of the watch for sure, and Saxon's expert, Rhonda Harper, explores this at length. She points out how that when they're doing this research on the Internet, they will encounter both of the marks and likely be confused when they see them together on the Internet. And that's been briefed extensively. But that's in Rhonda Harper's expert report as well as her deposition testimony. So coming back to the question of descriptiveness and the consumer, the descriptive sense in ION-X by Apple, in Dr. Farrell's report at that citation that I gave you, APDS-1.1, Excuse me. This is Judge Winter. This is Judge Winter. Do you find that your mark, that Saxon's mark, is not descriptive? Correct, Your Honor. It is on the scale of inherent distinctiveness, it is likely to be suggestive but not descriptive. Because under the test of inherent distinctiveness, it would take some understanding that this is the contraction of ION exchange. So I would say it is not descriptive. I would say it is suggestive. And that presupposes that the consumer knows something about the ION exchange process. A specialized buyer of glass is one type of consumer, Your Honor, and a specialized buyer of glass might know something about the ION exchange process. An ordinary consumer that is just buying an Apple watch does not have the scientific background to know that glass can be strengthened by ION exchange. That is just not common knowledge. One minute. One minute. So that is the answer to that question. But anyway, regarding the other aspects, the court did not look at Saxon's evidence of bad faith that Apple commissioned to form a legal opinion on its intended use of IONX with respect to ION-EX, but refused to produce it. Apple has a history of acting in bad faith in other cases through adapting and breaching IMARCs, as in Cisco Systems versus Apple Inc. And also, Saxon demonstrated that Apple had conducted trademark clearance searches on ION-X in an unusual nature, because Apple tried to claim that they were being used, they were being searched as descriptive uses, and we have expert testimony by a trademark practitioner on that. And that is just under the different aspects of fair use. There is also the question of using the ION-X as a trademark, and the court did not analyze any specific, the district court did not analyze any specific advertisements in its opinion whatsoever, and it appears to have overlooked the internet advertisements that were presented in the complaint, as well as were briefed in this appeal that clearly showed that Apple was using ION-X in its internet advertising as a trademark. All right. You have two minutes for rebuttal. We'll hear from the other side. Okay. Good morning, Your Honor. May I please record? I'm Dale Sindaly, counsel for Appellee Apple Inc. Affirmance is proper for two independent reasons. First, Apple's use of the phrase ION-X is permitted under the descriptive fair use doctrine, and second, the district court correctly held that no reasonable jury could find likelihood of confusion, finding not a single factor favored Saxon. Turning first to descriptive fair use, as the Supreme Court stated in KP Permanent Makeup, citing this court's decision in Carfreshener, the Lanham Act was not designed to deprive commercial speakers of the ordinary utility of descriptive words. In keeping with this principle, the district court correctly found Apple satisfies this test for fair use, because it uses the term, one, descriptively, two, not as a trademark, and three, in good faith. Focusing first on descriptiveness, this court finds descriptiveness when a term is used in its descriptive sense, which includes, as noted in Cosmetically Sealed, to describe a characteristic of the goods, such as size or quality. This case is quintessentially such a circumstance, as Apple uses ION-X to describe a characteristic of the glass, that it's strengthened using the ION exchange process. ION refers to ION, and X, as Apple's linguistics expert Dr. Farrell testified, is a common abbreviation for exchange, and Saxon doesn't rebut this. Moreover, as the district court correctly held, quoting EMI, descriptive use is determined by assessing the manner in which a mark is used, and such an assessment also favors Apple. As shown on pages 10 and 11 of Apple's brief, Apple uses the phrase on the back of its watch, and on the side of the box, in the same font size and location as other materials, like composite back, and its website does the same thing. And in fact, the website even explains that ION-X means it's fortified at the molecular level through ION exchange. In fact, Saxon's own expert, James Berger, professor of marketing, testified, quote, I don't believe they're using it as a trademark. I think they're using it as a description of a component part. Now, in my friend's argument, Saxon emphasizes, well, you know, did they have a survey as to what consumers understood, and what about, maybe consumers wouldn't even know what ION-X means. That's just not the law, and there's no requirement for such evidence to be submitted. The Lanham Act, 15 U.S.C. 1115b-4, simply says that the defendant must use a term other than it is a mark, and that it be descriptive. And in keeping with that, this court's decision focuses on the objective evidence of what the defendant's use is. For example, in Carfreshener, this court stated, what matters is whether the defendant is using the protected word or image descriptively, and not as a mark. And thus, in all the cases that have cited by both parties in the briefs, no one has required there to be a consumer survey as to whether consumers perceived it to be as descriptive, nor that there have been any requirements that consumers understand what the phrase means. The coherent case in the Tenth Circuit shows that. The NanoChem, where A-5D was deemed descriptive, or the U.S.C.PA case, Assets of S. And in fact, it would be terrible policy for this court to impose a new requirement that consumers understand that a phrase necessarily, that they know exactly what it means. Possibly, an appreciable number of consumers may not know that sodium chloride is the chemical compound for salt. It doesn't mean, though, that someone can get a trademark in sodium chloride and prevent other people from using it, which seems to be effectively what they're saying. But if someone gets a can of soup and sees sodium chloride listed along with chicken, they're likely to understand that that's an ingredient and not used as a mark. And that is very much the situation here. Turning to use as a mark, the second factor, the context shows that Apple is not using ION-X as a source identifier. As I said, their own expert said that. But it's also consistent with the law of this circuit, as non-trademark use is shown by the prominent display of defendants' own trademarks. In this case, the famous Apple marks. Cosmetically sealed stands for that. That identifies the source. In addition, this court looks to and finds non-trademark use where a term is located on the package in a non-prominent way where only a close reader would notice. And this is, again, the quintessential non-prominent way on the back of a watch on the listing of the ingredients under the famous housemark. Now, turning to the third element, good faith, the court correctly found Apple acted in good faith because Apple chose a term that describes its product, not in order to capitalize on plaintiff's goodwill, which is the standard in JA apparel. Among other things, Apple uses ION-X to refer to a characteristic of its product, which Lange versus Retirement Living says supports good faith. Second, Apple uses its own housemark prominently to identify the source of origin, which Nabisco versus Warner-Lambert and cosmetically sealed supports good faith. Third, Apple does use the term for years and internally and in communications with suppliers long before this litigation commenced, which also indicates a lack of predatory behavior. There's simply no evidence that Apple intended to capitalize on the goodwill of Saxon or to create confusion. What I heard my friend argue is that, well, Apple had a legal clearance and didn't release it. Well, we're not relying on advice of counsel. All the cases that we cited, car freshener, cosmetically sealed, et cetera, it's rare that somebody weighs privilege and relies on advice of counsel. That's not something that you need to do. We didn't do it here, but that doesn't mean it's not in good faith. They also argue, well, doing a trademark search was somehow unusual, but the unrebutted evidence is that doing such was standard at Apple, even with regard to descriptive terms. And the idea that Apple is somehow a serial infringer, citing an 11-year-old news article about an unrelated mark in an unrelated case that ended up with zero decision, let alone a finding that Apple is a serial infringer, I guess needs fewer words than I've already given it. Turning to the second independent basis for affirmance, the lack of likelihood of confusion, again, the district court got it right. Here, while Apple has produced evidence that all the likelihood of confusion factors favor Apple, I wanted to highlight a few of them in particular. First, Saxon's ionics mark is weak conceptually and commercially. It's conceptually weak because its own 30B6 witness admitted that Saxon's mark refers to an ionic exchange strength and process, and their own expert, Rhonda Harper, repeatedly admitted in her deposition that it was a descriptive term. Whether it's descriptive or suggestive doesn't actually matter. It's still conceptually weak, but it's clearly descriptive. Second, it's also commercially weak. Saxon admits it's done virtually no advertising, but it hasn't wanted to draw attention to itself, and in answer to your Honor's question, Saxon specifically admitted that a typical American household has no reason to believe that the typical American household would be familiar with Saxon's mark. It's hard to see why someone would be confused if they've never even heard of it. In addition, second, the similarity of the marks factor favors Apple. That, under Malatier, looks to the overall impression of how a mark is used. Now, not only are the marks spelled differently, but they appear in different contexts close by their respective house mark, and as this court has noted in Nabisco versus Warner-Lambert, the prominent use of house marks can significantly reduce, if not altogether eliminate confusion, and as noted, not only does Apple use its house mark, but on the few packing crates and invoices that Saxon has submitted that show its use, the Saxon mark is also used. One minute. The goods and services factor also favors Apple. The parties are not competitors. Saxon is in the business of providing glass strengthening services, and Apple is not. The court did find, at an abundance of caution, that actual confusion was neutral, but I wanted to emphasize that Saxon offers no anecdotal evidence of actual confusion, despite four years, and that the survey strongly supports Apple. The district court agreed that DepreJay's survey was methodologically sound. It severely criticized, though let in, the Harper survey. I direct the court's attention to the Colby case at the district court, which was affirmed, though not discussing the survey by this court, where Judge Cote eliminated a very similar survey, asking consumers to imagine, to envision, what a mark would look like, as opposed to what DepreJay did to show it in their actual context. In conclusion, Saxon has simply not met its burden under Celotex to come forward with specific facts and evidence to defeat Apple's motion for summary judgment on either theory. This is just the type of case Rule 56 was intended to address, in keeping with the other summary judgment cases we cite on page 21 of our brief, and we respectfully ask the court to affirm. Thank you. We'll hear the rebuttal. Mr. Delaney, you have two minutes. Thank you, Your Honors. I would like to first point out that my opposing counsel has pointed to a misstatement on, this is on the point of descriptiveness, under fair use, the descriptiveness of ION-X. He pointed out a misstatement by our Saxon's expert, Mr. Berger. Mr. Berger had a likelihood of confusion survey, which was disqualified under Dogbear by the lower court. However, my opposing counsel has also stated that there is no survey evidence in the record that ION-X is not descriptive to a relevant consumer, and I would beg to differ. Under the Berger survey, under likelihood of confusion, there were questions that go right to the issue of descriptiveness of the term ION-X. I would point the court to the Berger questionnaire survey results at APPX 2306, in which it is shown that out of a survey of 40 buyers of specialized glass, ION-X is not descriptive to 97.5% of those specialized buyers of glass. One minute. That's question 13 of the Berger questionnaire. The results indicate that out of the 40 respondents, only two out of the 40 has ever heard of the term of ION-X at all. And of those two, under question 15, it shows that only one had any understanding that ION-X was supposed to be associated with ION Exchange. So this is a survey of 40 buyers of specialized glass who would be expected to have a higher understanding of the descriptiveness of the term ION-X than an ordinary consumer of a watch. So I would submit that there is survey evidence, and my friend representing Apple is mistaken, is that there is convincing survey evidence in the record that ION-X would not be descriptive to a relevant consumer. In terms of all the other factors under likelihood of confusion, faxing glass will rest on the written arguments that have been briefed earlier. The court disregarded an analysis of the words under the similarity of the marks. They are phonetically, arguably they are the same. Under strength of the mark, the court adopted the wrong level of inherent distinctiveness, calling the ION-X mark as descriptive when it is suggestive, a much stronger distinctiveness. All right, we have your arguments. Thank you. We will reserve decision.